IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BROOKE CIPRICH, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | 3:15-CV-02364 |
| | : | (JUDGE MARIANI) |
| LUZERNE COUNTY, et al., | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

### I. INTRODUCTION AND PROCEDURAL HISTORY

Presently before the Court is a Report and Recommendation ("R&R") (Doc. 47) by Magistrate Judge Carlson, in which he recommends granting the "Motion of Defendant Luzerne County Children and Youth Services to Dismiss Plaintiff's Complaint Pursuant to F.R.C.P. 12(b)(6) or in the Alternative Motion for Summary Judgment" (Doc. 42) and further recommends that this case be dismissed as to the remaining unserved defendants. Plaintiff has filed a "Statement of Appeal" and accompanying "Brief in Appeal of Recommendation of Magistrate Judge" (Doc. 50), which the Court interprets as Objections to the R&R. Defendants Luzerne County Children and Youth Services ("LCCYS"), JoAnn Costanzo, and Jamie Stuart filed a response in opposition to Plaintiff's "Appeal." (Doc. 51).

For the reasons that follow, upon *de novo* review of the R&R, the Court will overrule Plaintiff's Objections and adopt the pending R&R.

On December 8, 2015, Plaintiff filed a Complaint naming as Defendants the following twelve individuals and entities: Luzerne County, LCCYS, Frank Castano, Joann Costanzo, Jamie Stuart, Loreen Yeager, Kayci Konopki, Tracy Schultz, Nicole Bednarek, Amanda Young, Tricia Godshalk, and Brian Waugh. (Doc. 1). The Complaint contains two counts alleging constitutional violations pursuant to 42 U.S.C. § 1983 and one state law count alleging intentional infliction of emotional distress.

On August 22, 2016, the Court entered two Orders (Docs. 29, 30) adopting Magistrate Judge Carlson's Reports and Recommendations (Docs. 27, 28) wherein the Magistrate Judge recommended granting the motions to dismiss filed by Defendant Young (Doc. 8) and Defendants Luzerne County, Yeager, and Bednarek (Doc. 18).[1]

On September 23, 2016, LCCYS filed a motion to dismiss, or in the alternative, motion for summary judgment (Doc. 42), requesting that the complaint be dismissed against LCCYS and its employees JoAnn Costanzo and Jamie Stuart.

Despite this case pending for over 20 months, to date, the record indicates that none of the other five defendants, i.e. Frank Castano, Kayci Konopki, Tracy Schultz, Tricia Godshalk, and Brian Waugh, have been served.

## II. STATEMENT OF FACTS

Although the Report and Recommendation succinctly presents the facts set forth in Plaintiff's Complaint, this Court will again reiterate the relevant alleged facts, which the Court takes as true for purposes of this motion.

---

[1] Interestingly, while Plaintiff filed Objections to the current R&R, she failed to file Objections to the prior two R&Rs (Docs. 27, 28), which were in part premised on the same reasoning to which Plaintiff now objects.

Brooke Ciprich and Eric Phillips are the mother and father of two minor children, E.P. (DOB 2/9/11) and T.P. (DOB 10/18/13). (Doc. 1, ¶¶ 16, 17). On November 18, 2013, Phillips entered Ciprich's home and assaulted her, an incident characterized by Plaintiff as "serious." (*Id.* at ¶ 18). During this incident, Phillips repeatedly struck Ciprich and fired a gun next to her head "in an effort to terrorize" her. Additionally, minor child T.P. was thrown to the floor and sustained injuries. (*Id.*). As a result, T.P. was transported to Geisinger Danville for further evaluation for a depressed skull fracture and E.P. was transported to Community Medical Center in Scranton for treatment. (*Id.* at ¶¶ 19, 20). This entire incident was reported to LCCYS and investigated by them. (*Id.* at ¶ 21). On that same day, Phillips was arrested and later posted bail. Ciprich states that she "had nothing to do with that release." (Doc. 1, at ¶ 22).

On November 20, 2013, Plaintiff sought and obtained a PFA against Phillips. A final PFA hearing was scheduled for November 26, 2013. (*Id.* at ¶ 23). However, Plaintiff did not appear for the PFA hearing, purportedly because "Plaintiff had been asked to appear for a large variety of court dates and medical appointments and had been confused by the date." (*Id.* at ¶ 24). On that same day, Ciprich became aware that she had missed the court date and contacted law enforcement to discuss how to refile for a PFA. (*Id.* at ¶ 25).

Plaintiff began staying with Catherine Yankovwich, a long term friend with a bipolar disorder, due in part to the November 18 incident. (*Id.* at ¶ 27). On November 30, 2013, Yankovwich had "a serious psychiatric episode and Plaintiff was forced to use pepper spray

3

to keep Ms. Yankovwich away from her." Ciprich's child E.P. was in the area when she used the pepper spray. According to Plaintiff, "[t]his was the only time Ms. Yankovwich had ever acted in this manner." (*Id*.).

On December 5, 2013, Plaintiff refiled the PFA against Phillips and was granted a temporary PFA. The matter was set for a hearing on December 12, 2013. (Doc. 1, ¶ 28).

On December 10, 2013, LCCYS "claimed" to have had an internal meeting which it characterized as an Act 33 meeting. LCCYS "characterized what occurred as a near fatality situation even though there were no records to support this determination." (*Id*. at ¶ 29). Later that same day, LCCYS filed an emergency petition for shelter care of the minor children, which was granted. (*Id*. at ¶ 30). Also that same day, LCCYS visited Plaintiff's residence and informed Ciprich that Phillips had been released on bail. At that time, LCCYS caseworkers Stuart and Konopki, in conjunction with Officer Shultz, took custody of the minor children to have them placed in foster care. (*Id*. at ¶ 31).

On or about December 19, 2013, LCCYS filed formal dependency petitions for both minor children, alleging as a basis for dependency that (1) Plaintiff should have told LCCYS that Phillips was released from prison; and (2) Plaintiff was involved in, what she characterizes as "an unrelated minor altercation with a friend." (Doc. 1, ¶ 32). These petitions were scheduled for a hearing to be held on January 14, 2014. (*Id*.).

On December 20, 2013, a hearing was held on the shelter care of the minors. At this time, LCCYS Supervisor Costanzo, "without foundation or factual support," opined that

4

Ciprich had a "diminished capacity." The Court found the children to be dependent, but transferred custody of the minors back to Ciprich. The finding of Dependency was then reversed and left as an open question. (*Id.* at ¶ 33).

Although it is unclear from the Complaint who did so, it was requested that Ciprich undergo a psychiatric assessment. On January 9, 2014, Dr. Fischbein returned a report finding that Plaintiff "does not suffer from any major psychiatric illness." (*Id.* at ¶¶ 34, 35).

On March 14, 2014, following a hearing, Ciprich's children were found not to be dependent and the LCCYS action was dismissed. (*Id.* at ¶ 36).

According to Plaintiff, this series of events demonstrates that "the named employees of Luzerne County Children and Youth Services all conspired to violate the Plaintiff's civil rights". (*Id.* at ¶ 37). In relevant part, Plaintiff asserts that:

> Defendant Castano was the director of Children and Youth Services during the time period at issue. Defendant Costanzo was the CYS Supervisor who oversaw this case and provided much of the testimony presented. Defendants Stuart and Konopki are caseworkers employed by CYS who were directly assigned to review this situation. . . .

(Doc. 1, ¶ 38).

### III. ANALYSIS

A District Court may "designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition" of certain matters pending before the Court. 28 U.S.C. § 636(b)(1)(B). If a party timely and properly files a written objection to a Magistrate Judge's

Report and Recommendation, the District Court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.* at § 636(b)(1)(C); *see also Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011); M.D. Pa. Local Rule 72.3.

In the present case, the Court referred Defendants' motion (Doc. 42), to Magistrate Judge Carlson on March 22, 2017. The Magistrate Judge thereafter issued the R&R (Doc. 47) currently pending before this Court.

Plaintiff objects to the R&R on several grounds. Plaintiff's Objections fall within four categories: "Issues with the Statement of Facts"; "Immunity of Individual Defendants"; "Immunity of Agency"; and "Intentional Infliction of Emotional Distress." (Doc. 50).[2] The Court will address these Objections in turn.

## 1. "Issues with the Statement of Facts"

Plaintiff's Objections raise five "concerns" that "cause Plaintiff concern that the facts have been properly identified." (Doc. 50, at 1). The concerns are summarized as follows: (1) the R&R does not "address or consider the 'Act 33' meeting that was pleaded in the complaint"; (2) the R&R incorrectly states that there are two people named "Costanzo" whereas the Complaint identifies a "Frank Castano" and "JoAnn Costanzo"; (3) the R&R fails to "evaluate or consider the fact that the children were returned to Plaintiff's care 10

<hr>

[2] Plaintiff does not object to the Magistrate Judge's recommendation that the unserved defendants be dismissed pursuant to Fed. R. Civ. P. 4(m) (*see* Doc. 47, at 31-33). The Court agrees with the Magistrate Judge's analysis and will adopt this recommendation without further discussion. Thus, Defendants Frank Castano, Kayci Konopki, Tracy Schultz, Tricia Godshalk, and Brian Waugh are dismissed without prejudice.

days after they were seized"; (4) the R&R incorrectly concludes that a finding of dependency had been entered and that on March 14, 2014, the children were found to be no longer dependent, when, according to Plaintiff, "the children were never found to be dependent and there was no finding that the children were no longer dependent"; and (5) the R&R inappropriately "appears to be blaming Plaintiff for the external factors that led to this situation." (Doc. 50, at 5-7).

The Court will not dwell on these issues. Each of these concerns is remedied, to the extent there was any mistake by the Magistrate Judge, by this Court's own Statement of Facts, *supra*, and the Court's analysis and discussion of the relevant facts below.

### 2. "Immunity of Individual Defendants"

With respect to the Magistrate Judge's finding that the individual defendants are entitled to absolute and/or qualified immunity (*see* Doc. 47, at 13-19), Plaintiff argues that "it is premature to draw this conclusion" and that discovery should be conducted prior to making a determination as to immunity. (Doc. 50, at 7).[3]

Although the R&R and Plaintiff's Objections focus on whether the individual defendants are entitled to absolute and/or qualified immunity, the Court finds it necessary to first conduct a Rule 12(b)(6) analysis to determine whether Plaintiff has even asserted a constitutional violation. *See Larsen v. Senate of Com. of Pa.*, 154 F.3d 82, 86-87 (3d Cir.

---

[3] Plaintiff does not object to Magistrate Judge Carlson's recommendation that the individual defendants be dismissed to the extent that they are being sued in their official capacities (Doc. 47, at 11-13). The Court agrees with the Magistrate Judge's analysis and will dismiss the claims against the individual defendants in their official capacities for the reasons set forth in the R&R. Therefore, Plaintiff's dispute here is only whether the defendants are entitled to absolute and/or qualified immunity in their individual capacities.

1998) ("when a qualified immunity defense is raised[,] a court first should determine whether the plaintiff has asserted a violation of a constitutional right at all. Only if that question is answered affirmatively need the court determine whether the defendant is entitled to qualified immunity on the grounds that his conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known.")(internal quotation marks omitted).

Here, Plaintiff's Complaint suffers from a fundamental flaw: it fails to identify what constitutional right she was deprived of by Defendants Costanzo and Stuart. Plaintiff's Complaint broadly states that "Defendants' conduct and conspiracy . . . was a deprivation, under color of state law, of rights guaranteed to the plaintiffs [sic] under the Fourteenth Amendment to the United States Constitution" and that "Defendants' conduct and conspiracy . . . was a deprivation, under color of state law, of the right of association guaranteed to the plaintiffs [sic] under the First Amendment to the United States Constitution." (Doc. 1, ¶¶ 46, 47).

With respect to the Fourteenth Amendment claim, Plaintiff's Complaint does not make clear whether she is asserting a deprivation of procedural due process, substantive due process, or both. However, Plaintiff's brief in opposition to the motion to dismiss leads this Court to believe that her claim is one for procedural due process. Specifically, Plaintiff's explanation of her claim, in totality, is as follows:

8

Plaintiff has alleged that Defendants improperly held an Act 33 meeting which led to seizure of the children later that same day. (Complaint at 29). Act 33 refers to Act 33 of 2008, which has been codified in relevant part as follows:

(d) Child fatality or near fatality review team and written report.

• (1) A child fatality or near fatality review team shall be convened by a county agency in accordance with a protocol developed by the county agency, the department and the district attorney in a case when a child dies or nearly dies as a result of child abuse as to which there is an indicated report or when the county agency has not made a status determination within 30 days. The team may convene after a county agency makes a determination of an indicated report and shall convene no later than 31 days from the receipt of the oral report to the department of the suspected child abuse. A county agency in the county where the abuse occurred and in any county where the child resided within the 16 months preceding the fatality or near fatality shall convene a child fatality or near fatality review team. A team shall consist of at least six individuals who are broadly representative of the county where the team is established and who have expertise in prevention and treatment of child abuse. With consideration given to the circumstances of each case and availability of individuals to serve as members, the team may consist of the following individuals:

...

o (xii) An individual representing parents.

23 Pa.C.S. § 6365. A meeting occurring on December 10, 2013 has been characterized as an "Act 33" meeting. Plaintiff has yet to receive full records of this meeting. It is believed and therefore averred that the individual Defendants either were present at or did acquiesce to the results of this meeting. There are two major problems with this meeting:

1) There was no "near fatality" which would have provided a basis for such a meeting being convened, and

2) If such a meeting was convened, no notice was given to Plaintiff. Per the statute, a representative of parents may be part of the "team."

Additionally, Plaintiff is alleging that the seizure and continued deprivation of the custody of her children was without just cause. (Complaint at Paragraphs 54 and 55). This taking of the children without just cause is also a due process violation.

(Doc. 45, at 11-12).

Plaintiff's first argument is unsupported by her own factual assertions. Plaintiff argues that the Act 33 meeting on December 10 was unlawful because there was no near fatality. This ignores Plaintiff's own allegations that on November 18, a "serious incident occurred during which" Phillips assaulted Ciprich, fired a gun next to her head, and their one-month-old child was "thrown to the floor," sustaining injuries, and was taken to the hospital for evaluation for a depressed skull fracture. Although it is unclear what happened to the other child, that child was also taken to a hospital "for treatment." (See Doc. 1, ¶¶ 18, 19). According to the applicable Pennsylvania statute, a "near fatality" is defined as "[a] child's serious or critical condition, as certified by a physician, where that child is a subject of the report of child abuse." 23 Pa.C.S.A. § 6303(a). Plaintiff thus fails to allege a crucial element of her claim that no "near fatality" occurred; i.e. that no physician ever certified that her child suffered from a "serious or critical condition".[4]

Plaintiff's second argument is even more tenuous. Plaintiff states that she did not receive notice of the meeting. Not only does Plaintiff's Complaint not assert that she did not receive notice, the statutory language is clear: "the team *may* consist of . . . an individual representing parents." Neither Plaintiff's Complaint, nor her citation to the statute, support an argument that she was entitled to be at the meeting at issue.

---

[4] Plaintiff's Complaint does state that LCCYS "characterized what occurred as a near fatality situation even though there were no records to support this determination." (Doc. 1, ¶ 29). However, Plaintiff fails to specifically allege that there was no certification by a physician that her child suffered from a serious or critical condition, a necessary element in any attempt to state a cause of action in this type of case.

Further, it is clear that any procedural due process claim is not premised on the denial of a timely post-removal hearing. Plaintiff does not allege any facts in her Complaint to support a claim that she was not given a timely hearing after her children were removed, nor does Plaintiff make this argument in her brief in opposition to the motion to dismiss. Therefore, the Court will not address this issue.

For the foregoing reasons, Plaintiff has failed to set forth a cause of action for any procedural due process violation.

With respect to the First Amendment claim, Plaintiff's Complaint states that she was deprived of the "right of association guaranteed to the plaintiffs [*sic*] under the First Amendment to the United States Constitution". Assuming Plaintiff may bring such a claim, it is intertwined with a Fourteenth Amendment substantive due process claim. *See K.K. v. Berks Cty.*, 2016 WL 1274052, * 8 (E.D. Pa. 2016) ("it does not appear that the First Amendment offers any protections in this context in addition to, or separate from, the right to familial association that is protected by the Due Process Clause.").

The Third Circuit has explained that while parents have constitutionally protected liberty interests "in the custody, care and management of their children", this interest is not absolute. *Croft v. Westmoreland Cty. Children and Youth Servs.*, 103 F.3d 1123, 1125 (3d Cir. 1997). Rather, "this liberty interest in familial integrity is limited by the compelling governmental interest in the protection of children – particularly where the children need to be protected from their own parents." *Id*. However, "a state has no interest in protecting

11

children from their parents unless it has some reasonable and articulable evidence giving rise to a reasonable suspicion that a child has been abused or is in imminent danger of abuse." *Id.* at 1126. Thus, the Circuit has emphasized that a Court's focus "is whether the information available to the defendants at the time would have created an objectively reasonable suspicion of abuse justifying the degree of interference with the [parents'] rights as [the child's] parents. Absent such reasonable grounds, governmental intrusions of this type are arbitrary abuses of power." *Id.* "Reasonable suspicion is lacking when a child welfare agency has 'consciously disregarded a great risk that there had been no abuse.'" *Mulholland v. Gov. Cty. of Berks*, 706 F.3d 227, 241 (3d Cir. 2013) (quoting *Ziccardi v. City of Philadelphia*, 288 F.3d 57, 66 (3d Cir. 2002)).

With respect to social workers, the Third Circuit has recognized that:

a social worker acting to separate parent and child does not usually act in the hyperpressurized environment of a prison riot or a high-speed chase. However, he or she rarely will have the luxury of proceeding in a deliberate fashion, as prison medical officials can. As a result, in order for liability to attach, a social worker need not have acted with the "purpose to cause harm," but the standard of culpability for substantive due process purposes must exceed both negligence and deliberate indifference, and reach a level of gross negligence or arbitrariness that indeed "shocks the conscience."

*Miller v. City of Philadelphia*, 174 F.3d 368, 375-376 (3d Cir. 1999). A defendant social worker therefore must have been "aware of more than a substantial risk – let us say a great risk – that there was no good cause for the removal of the children." *Ziccardi*, 288 F.3d at 66.

At this stage in the pleadings, Ciprich was clearly not required to come forth with the requisite evidence to establish a First Amendment freedom of association or Fourteenth

12

Amendment substantive due process claim. However, Plaintiff must have adequately alleged facts to support the elements of these claims. She has not done so. Crediting only the allegations of Plaintiff's Complaint as the facts available to the defendants at the time they removed the children from Ciprich's custody and applied for an emergency petition for shelter care, the information available to the defendants at that time included: (1) that a "serious incident" occurred on November 18 wherein Phillips assaulted Plaintiff and shot a gun at her head; (2) that during this incident, Plaintiff's youngest child T.P. was "thrown to the floor"; (3) that T.P. was transported to the hospital for evaluation for a depressed skull fracture and Plaintiff's other child E.P. was transported to a different hospital for treatment; (4) that on November 30, Plaintiff's friend, with whom Plaintiff and her children were staying, "had a serious psychiatric episode and Plaintiff was forced to use pepper spray to keep" the friend away from her; (5) that E.P. was "in the area" when Plaintiff used the pepper spray; and (6) that on or before December 10, Phillips was released on bail. Plaintiff's Complaint does not set forth facts demonstrating, nor her brief in opposition to the motion to dismiss explain, how this information would not create an objectively reasonable suspicion of abuse justifying the temporary removal of the children. Further, even crediting Plaintiff's conclusory allegations that her First Amendment or Fourteenth Amendment constitutional rights were in some way violated, Plaintiff has not pleaded any facts which could even reasonably be read to allege conduct that "shocks the conscience."

As a result, Plaintiff has failed to adequately plead a First Amendment or Fourteenth Amendment substantive due process claim.

Although this Court's determination that Ciprich has failed to state a claim for any constitutional violation by the individual defendants renders a discussion of whether the defendants are entitled to immunity, and qualified immunity in particular, unnecessary, the Court will nonetheless address the issue of both absolute and qualified immunity. *See Larsen,* 154 F.3d at 86-87.

Ciprich states that the Magistrate Judge "has correctly stated the legal principles that govern absolute and qualified immunity." (Doc. 50, at 7). The Court agrees and adopts the Magistrate Judge's recitation of the law with respect to immunity.

Nonetheless, for purposes of addressing Plaintiff's Objections, the Court reiterates the Third Circuit's holding in *Ernst v. Child and Youth Services of Chester County,* that Children and Youth Service defendants "are entitled to absolute immunity for their actions on behalf of the state in preparing for, initiating, and prosecuting dependency proceedings." 108 F.3d 486, 495 (3d Cir. 1997). As the Court explained,

> Because CYS caseworkers are directly responsible for the recommendations made to the court in dependency proceedings, their actions in determining those recommendations and communicating them to the court are "intimately associated" with the judicial process in much the same way as are a prosecutor's actions in representing the state in criminal prosecutions.

*Id.* at 496. However, the Third Circuit made clear that this holding only applies to "actions taken by child welfare workers in the context of dependency proceedings" and that absolute

14

immunity is not available "to 'investigative or administrative' actions taken by child welfare workers outside the context of a judicial proceeding." *Id*. at 497 n. 7.

Here, Plaintiff does not dispute the Magistrate Judge's finding that Defendant Costanzo is immune from any testimony she gave during the dependency proceedings (*see* Doc. 47, at 15). Plaintiff also seemingly admits that the law with respect to absolute immunity protects the individual defendants from liability for any actions taken, at minimum, as of December 19, 2013, when LCCYS filed formal dependency petitions for both minor children. Instead, Plaintiff argues that "the meeting and decision to seize Plaintiff's children occurred prior to any court proceedings being initiated and did not occur anywhere near a courtroom" and that "the primary misconduct by the Defendants in this case occurred prior to any actual dependency proceeding." (Doc. 50, at 8).

First, on December 10, 2013, the same day that LCCYS took custody of the children, they filed an emergency petition for shelter care of the children, which was granted. Thus, Plaintiff's assertion that "the meeting and decision to seize Plaintiff's children occurred prior to any court proceedings being initiated" is somewhat misleading in that LCCYS sought court intervention the same day that they held the meeting at issue.

Next, Plaintiff fails to explain how the defendants' "meeting and decision to seize" Plaintiff's children are not actions done in preparing for or initiating dependency proceedings. Because the Complaint is devoid of any allegations that the defendants took any other actions between December 10 and December 19, the meeting and seizure of the

15

children are the only issues of which Plaintiff can complain. Instead, Plaintiff's Complaint alleges only the following well-pleaded facts with respect to Defendants JoAnn Costanzo and Jamie Stuart, which are accepted as true for purposes of resolving the current motion. According to Plaintiff, "Defendant Costanzo was the CYS Supervisor who oversaw this case and provided much of the testimony presented [and] Defendants Stuart and Konopki are caseworkers employed by CYS who were directly assigned to review this situation." (Doc. 1, ¶ 38). Following the events of November 18 and November 30, on December 10, 2013, LCCYS caseworkers Stuart and Konopki, "in conjunction with Defendant Officer Shultz[,] took custody of the minor children to have them placed in foster care." (*Id.* at ¶¶ 8, 9, 31). On December 20, 2013, Costanzo "offered an opinion that Plaintiff has a 'diminished capacity'" at a hearing held with respect to the shelter care of the minors. (*Id.* at ¶ 33). Plaintiff's Complaint fails to allege that Costanzo and/or Stuart participated in the "Act 33" meeting or in the decision to remove the children from Plaintiff's custody.[5]

As the Third Circuit noted, quoting the Ninth Circuit,

[a]lthough child services workers do not initiate criminal proceedings, their responsibility for bringing dependency proceedings, and their responsibility to exercise independent judgment in determining when to bring such proceedings, is not very different from the responsibility of a criminal prosecutor. The social worker must make a quick decision based on perhaps incomplete information as to whether to commence investigations and initiate proceedings against parents who may have abused their children.

---

[5] In contrast, the Complaint does allege that "Defendants Goshalk and Waugh were both actively involved in the situation *and are believed to have participated in the decision making that led to the placement of the children.*" (Doc. 1, ¶ 39)(emphasis added). No such allegation is made as to Costanzo or Stuart.

16

*Ernst*, 108 F.3d at 496 (quoting *Meyers v. Contra Costa Cnty Dep't of Soc. Servs.*, 812 F.2d 1154, 1156 (9th Cir. 1987)).

In the present case, Plaintiff's Complaint asserts that the November 18, 2013 domestic abuse incident was reported to LCCYS and investigated by them. (Doc. 1, ¶ 21). During this incident, Plaintiff admits that the father of her children struck her, fired a gun at her, and attempted to terrorize her and that during this time her child T.P. was thrown to the floor and sustained injuries which required the child to be transported to Geisinger Danville for evaluation for a depressed skull fracture and her other child to be transported to Community Medical Center in Scranton for treatment. (*Id.* at ¶¶ 19, 20). Plaintiff's Complaint also makes clear that LCCYS were aware of the incident with Yankovwich on November 30, 2013, since that was one of the reasons cited by Plaintiff that LCCYS used to take custody of her children.

In sum, Plaintiff has not set forth any allegations in her Complaint which show actions taken by one or both of the individual defendants which were not in connection with the formulation, preparation, and presentation of recommendations to the court regarding the children's dependency. The Court therefore adopts Magistrate Judge Carlson's analysis and recommendation with respect to the defendants' entitlement to absolute immunity.

To the extent that the Court were to accept Ciprich's argument that only qualified immunity may be available to the defendants, the Court also adopts the Magistrate Judge's analysis and recommendation on this issue.

17

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735, 131 S.Ct. 2074, 179 L.Ed. 2d 1149 (2011) (internal citations omitted). The doctrine "gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 565 U.S. 535, 546, 132 S.Ct. 1235, 182 L.Ed.2d 47 (2012).

Just as the Court noted with respect to qualified absolute immunity, Plaintiff's Complaint fails to specifically allege any actions taken by the individual defendants at issue in this motion other than (1) that Stuart was present when the children were removed from Ciprich's custody; and (2) that Costanzo testified at a hearing. There is no allegation in the Complaint that one or both of these individuals was present at the December 10 meeting or participated in the decision to remove the children on that same day, nor are there allegations of any other specific actions taken by these defendants. Furthermore, Plaintiff's Complaint alleges that LCCYS filed an emergency petition for shelter care of the minor children, which was granted. Thus, Stuart was acting pursuant to a Court order at the time he took the children. In sum, there is no factual allegations setting forth what clearly established right these defendants violated or how they violated that right.

18

For the reasons set forth in the R&R, as well as for the reasons discussed herein, the Court finds that, to the extent that Plaintiff has even asserted a constitutional violation, Stuart and Costanzo would be entitled to qualified immunity.

### 3. "Immunity of Agency"

Plaintiff next agrees with the Magistrate Judge's finding that Plaintiff's § 1983 claim against LCCYS is premised on a failure to train, but asserts that "it is extremely difficult to determine what internal policies and training exist without conducting discovery." (Doc. 50, at 9). Plaintiff therefore requests that the Court allow her to engage in discovery "to determine the training and policies that were implicated and to argue about the appropriateness of those policies" prior to determining whether her failure to train claim may survive. (Doc. 50, at 10). This amounts to an argument that Plaintiff should be allowed to engage in discovery in order to find facts which may help her state a cause of action. The Court cannot allow this impermissible "fishing expedition." *See e.g. Ranke v. Sanofi-Synthelabo Inc.*, 436 F.3d 197, 204 (3d Cir. 2006); *Bergin v. Teamsters Local Union No. 77*, 2011 WL 486230, * 2 (E.D. Pa. 2011)("'fishing expeditions' to seek out the facts needed to bring a legally sufficient complaint are barred by the pleading clarifications in *Iqbal* and *Twombly* ."). *See also, Chemtech Intern., Inc. v. Chem. Injection Techs., Inc.,* 170 Fed.App'x. 805, 808 (3d Cir. 2006) (quoting *DM Research, Inc. v. Coll. of Am. Pathologists,* 170 F.3d 53, 55 (1st Cir. 1999) ("the price of entry, even to discovery, is for the plaintiff to allege a factual predicate concrete enough to warrant further proceedings. . . . Conclusory

19

allegations in a complaint, if they stand alone, are a danger sign that the plaintiff is engaged in a fishing expedition.")).

Here, to adequately state a *Monell* claim for failure to train against LCCYS under Rule 12(b)(6), Plaintiff must have done more than merely allege that LCCYS had a policy of "deliberately indifferent training as to parents' and children's constitutional rights . . . ." This conclusory statement lacks any supporting allegations in the Complaint.[6]

Magistrate Judge Carlson engaged in an extensive and thorough explanation of the requisite standards to establish a cause of action for failure to train as well as the stringent standard that the plaintiff must meet. (*See* Doc. 47, at 21-25). As explained in the R&R:

"Establishing municipal liability on a failure to train claim under § 1983 is difficult." *Reitz v. Cnty. of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997). "Generally, deficient training can only amount to the requisite deliberate indifference 'where the failure to train has caused a pattern of violations.' *Berg v. County of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000). However, an exception exists and a 'failure to train' *Monell* claim may proceed absent a pattern of violations only where (1) 'a violation of federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools [or skills] to handle recurrent situations,' and (2) the likelihood of recurrence and predictability of the violation of a citizen's rights 'could justify a finding that [the] policymakers' decision not to train an officer reflected "deliberate indifference" to the obvious consequence of the policymakers' choice—namely, a violation of a specific constitutional or statutory right.' *Kline*, 255 Fed.Appx. at 629 (quoting *Board of County Commissioners of Bryan County v. Brown*, 520 U.S. 397, 409, 117 S.Ct. 1382, 1391 137 L.Ed.2d 626, 642 (1997))." *White v. Brommer*, 747 F. Supp. 2d 447, 463 (E.D. Pa. 2010).

---

[6] Magistrate Judge Carlson also recommended that the punitive damage claim against LCCYS be dismissed. Plaintiff does not object to this recommendation and Plaintiff's brief in opposition to the motion to dismiss admits that "Defendants are correct that governmental entities may not be subjected to punitive damages under 1983 claims." (Doc. 45, at 12). Therefore, the Court will dismiss the punitive damage claim against LCCYS without further analysis.

20

Here, this complaint simply does not make sufficient allegations which would permit a finding of institutional liability against Luzerne County Children and Youth Services. With respect to this institutional liability claim, in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) [ ]. "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* Fairly construed, these pleadings amount to little more than a formulaic recitation of the elements of a cause of action, without any supporting well-pleaded facts, a form of pleading that will not do. Therefore, Ciprich's *Monell* claims against this institutional defendant also fail as a matter of law.

(Doc. 47, at 25).

The Court agrees with the Magistrate Judge's analysis. A review of Plaintiff's

Complaint, brief in opposition to the motion to dismiss, and Objections to the R&R, do not

provide the Court with any reason to find that the Magistrate Judge erred in determining that

the Complaint does nothing more than attempt to recite the elements of a *Monell* claim,

without any factual allegations to support that claim. The Court will therefore overrule

Plaintiff's Objections and dismiss Plaintiff's *Monell* claim against LCCYS.

## 4. "Intentional Infliction of Emotional Distress"

Finally, Plaintiff contends that "it is premature to be ruling on [the Intentional Infliction

of Emotional Distress] claim as the basic common law tort requirements have all been met."

(Doc. 50, at 11).[7] Plaintiff further claims that "when legal process is instituted based upon

---

[7] It is unclear to this Court what Plaintiff means by this statement, and specifically to what "basic common law tort requirements" she is referring and believes have been met.

extreme and outrageous behavior, it is possible to prevail on an intentional infliction of

emotional distress claim." (Doc. 50, at 10). Specifically, Plaintiff asserts that:

> [n]o case located by Plaintiff stands for the fundamental that appears to be
> advanced by the Magistrate Judge – namely that they [*sic*] use of legal
> process is never a basis for an intentional infliction of emotional distress
> claim. Plaintiff contends that legal process can be improperly used by
> government employees and that the improper use of that legal process and
> its results can be so severe as to provide a valid basis for an Intentional
> Infliction of Emotional Distress claim.

(*Id.* at 11).

The Court does not read Magistrate Judge Carlson's R&R as asserting that the "use

of legal process is never a basis for an intentional infliction of emotional distress claim",

and the Court deems it likely that there may be situations wherein the use of legal process may

form the basis for such a claim. Rather, the Magistrate Judge's recommendation is

premised on a fundamental failure by Plaintiff to adequately plead a cause of action for

Intentional Infliction of Emotional Distress ("IIED").

For Plaintiff to prevail on her claim for IIED, she must show that the conduct of these

defendants was "intentional, outrageous or extreme conduct" and caused her severe

emotional distress. *Swisher v. Pitz*, 868 A.2d 1228, 1230 (Pa. Super. Ct. 2005).

"Outrageous or extreme conduct has been defined by the appellate courts of this

Commonwealth as conduct that is so outrageous in character, so extreme in degree, as to

go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly

intolerable in civilized society." *Id.* (internal quotation marks omitted). "With regard to the

22

element of outrageousness, it is for the court to determine in the first instance whether the

defendant's conduct may reasonably be regarded as so extreme and outrageous to permit

recovery." *Id.* at 1231.

> Cases which have found a sufficient basis for a cause of action of intentional
> infliction of emotional distress have . . . presented only the most egregious
> conduct. *See*[,] *e.g.*, *Papieves v. Lawrence*, 263 A.2d 118 (Pa. 1970)
> (defendant, after striking and killing plaintiff's son with automobile, and after
> failing to notify authorities or seek medical assistance, buried body in a field
> where discovered two months later and returned to parents. . . ); *Banyas v.
> Lower Bucks Hospital*, 437 A.2d 1236 (Pa. Super. Ct. 1981)(defendants
> intentionally fabricated records to suggest that plaintiff had killed a third party
> which led to plaintiff being indicted for homicide); *Chuy v. Philadelphia Eagles
> Football Club*, 595 F.2d 1265 (3d Cir. 1979)(defendant's team physician
> released to press information that plaintiff was suffering from fatal disease,
> when physician knew such information was false).

*Hoy v. Angelone*, 720 A.2d 745, 754 (Pa. 1998). Furthermore, a plaintiff must demonstrate

physical injury or harm to sustain a cause of action for IIED. *Fewell v. Besner*, 664 A.2d

577, 582 (Pa. Super. Ct. 1995) (citing *Kazatsky v. King David Mem'l Park, Inc.*, 527 A.2d

988, 995 (Pa. 1987); *Crivellaro v. Pa. Power and Light Co.*, 419 A.2d 207 (Pa. Super. Ct.

1985) (finding that symptoms of depression, nightmares, anxiety requiring psychological

treatment, and . . . ongoing mental, physical and emotional harm sufficiently stated physical

manifestations of emotional suffering to sustain a cause of action).

Here, Plaintiff fails to allege any conduct, whether singly or in combination, that rises

to the requisite level of "outrageous or extreme." The essence of Plaintiff's factual basis for

this claim is that following a domestic abuse incident which resulted in both of Ciprich's

children being taken to the hospital and another incident wherein Plaintiff was forced to

23

pepper spray a friend in front of one of her children, a meeting was held wherein it was decided that Ciprich's children would be temporarily removed from her custody, and that the children were returned to her 10 days later. Plaintiff's claim that she was therefore subjected to IIED because Defendants "acted to deprive [her] of the custody of her children without just cause to do so" and that the "Defendants knew or should have known that their actions were without just cause" (Doc. 1, ¶¶ 54, 55) are entirely conclusory and provide no support for her claim. Accordingly, it is clear that Plaintiff has failed to allege sufficient facts to establish that Defendants' conduct could be deemed sufficiently egregious to be outrageous or extreme. Therefore, the Court will overrule Plaintiff's objections with respect to the Magistrate Judge's recommendation that the claim for IIED should be dismissed.

## IV. CONCLUSION

For the aforementioned reasons as well as those set forth in Magistrate Judge Carlson's Report and Recommendation (Doc. 47), the Court will adopt the R&R, grant the "Motion of Defendant Luzerne County Children and Youth Services to Dismiss Plaintiff's Complaint Pursuant to F.R.C.P. 12(b)(6) or in the Alternative Motion for Summary Judgment" (Doc. 42), and dismiss the remaining unserved defendants.[8]

A separate order follows.

---

[8] The Magistrate Judge recommended that the Defendants' motion to dismiss be granted. The Court has adopted this recommendation but wishes to note that, were this not a case where the Defendants are entitled to qualified, if not absolute, immunity, the Court may have granted Plaintiff leave to amend the other cited deficiencies in Plaintiff's Complaint with respect to the constitutional claims. The presence of immunity for the remaining Defendants would make such leave to amend a futile exercise.

Robert D. Mariani
United States District Court Judge